# UNITED STATES DISTRICT COURT
# DISTRICT OF ALASKA

| | |
|---|---|
| Melissa Kulik, | |
|     Plaintiff, | 3:14-cv-00054 JWS |
| vs. | ORDER AND OPINION |
| United States of America, | [Re: Motion at Docket 22] |
|     Defendant. | |

## I. MOTION PRESENTED

In this medical malpractice case, plaintiff Melissa Kulik ("Kulik") moves at docket 22 for an order compelling defendant United States of America ("United States") to produce witness statements from eleven healthcare providers pursuant to Federal Rule of Civil Procedure 37. The United States opposes at docket 29. Kulik replies at docket 36. Oral argument was not requested and would not assist the court.

## II. BACKGROUND

According to the complaint, while Kulik was 36 weeks pregnant and receiving prenatal care from the Alaska Native Medical Center ("ANMC") she suffered a stroke that caused her permanent brain damage and physical deficits.[1] The complaint alleges

---

[1] Doc. 1-1.

that her stroke was caused by the malpractice of ANMC medical providers. Kulik filed the complaint in state court, and the United States removed it to this court pursuant to 28 U.S.C. § 1346(b)(1).

After the complaint was filed, a number of Kulik's healthcare providers wrote "practitioner narratives"[2] at the request of the Office of the General Counsel ("OGC") for the United States Department of Health and Human Services.[3] The cover letter that accompanied the request states that the narrative statements would give the providers a chance to "answer the allegation of negligence" by explaining their care and would be used by the OGC attorney and the U.S. Attorney in litigation.[4] The instant discovery dispute arose when the United States withheld production of the practitioner narratives, claiming they are protected by the work-product privilege.[5]

## III.  STANDARD OF REVIEW

If a party fails to make disclosures or cooperate in discovery, the requesting party may move to compel.[6] "The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections."[7]

---

[2]Doc. 22-9 at 1.

[3]Doc. 29-2 at 1-3.

[4]*Id.* at 1.

[5]Doc. 22-9 at 1; Doc. 22-15 at 3.

[6]Fed. R. Civ. P. 37(a)(1).

[7]*DIRECTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2002).

## IV. DISCUSSION

**A.     Work-Product Protection is Unavailable**

The federal work-product doctrine traces its origins to the Supreme Court's 1947 decision in *Hickman v. Taylor*.[8] The *Hickman* court struck a balance between the liberal discovery rules that require disclosure of "all the relevant facts gathered by both parties,"[9] on one hand, and "unwarranted inquiries into the files and the mental impressions of an attorney,"[10] on the other. The rule that emerged from *Hickman* is that discovery is proper where "relevant and non–privileged *facts* remain hidden in an attorney's file" and the party requesting discovery shows that "production of those facts is essential to the preparation of" his or her case.[11]

The work-product rules are now codified at Rule 26(b)(3) of the Federal Rules of Civil Procedure, which sets out the general rule that a party "may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative."[12] There is an exception to this rule, however, where the requested materials are otherwise discoverable under Rule 26(b)(1) and the party requesting them shows that "it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."[13]

The party asserting the work-product privilege bears the initial burden of proving that the privilege applies. If it does so, the burden shifts to the requesting party to show

---

[8] 329 U.S. 495 (1947).

[9] *Id.* at 507.

[10] *Id.* at 510.

[11] *Id.* at 511 (emphasis added).

[12] Fed. R. Civ. P. 26(b)(3)(A).

[13] *Id.*

(1) the substantial need for the materials and (2) the inability to obtain their substantial equivalent without undue hardship.[14]

### 1. Qualified work-product protection applies

The United States has established that qualified work-product protection applies here because the witness statements are documents that were prepared in anticipation of litigation by or for the United States.[15] Kulik argues that the statements cannot be covered by the work-product privilege because they contain no mental impressions of counsel, but this argument finds no support in the text of Rule 26(b)(3). "Under Rule 26(b)(3), it is clear that all documents and tangible things prepared by or for the attorney of the party from whom discovery is sought are within the qualified immunity given to work product, so long as they were prepared in anticipation of litigation or preparation for trial."[16] "Like other activities necessary to prepare for trial, obtaining a witness statement is protected, and disclosure in response to a discovery request from another party is warranted only if the required showing is made."[17]

### 2. Work-product protection does not bar production

Although the requested documents are the United States' protected work product, Kulik has sufficiently overcome that protection. As the court in *Dobbs v. Lamonts Apparel* persuasively explains, verbatim witness statements are often necessary to the full and efficient development of a case because "[n]o subsequent form of discovery can realistically take the place of a witness' prior written statement, whoever may come into possession of it."[18]

---

[14]*See* 8 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, AND RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2024 (3d ed.) ("WRIGHT & MILLER").

[15]Fed. R. Civ. P. 26(b)(3)(A).

[16]WRIGHT & MILLER § 2024.

[17]WRIGHT & MILLER § 2028.

[18]*Dobbs v. Lamonts Apparel, Inc.*, 155 F.R.D. 650, 653 (D. Alaska 1994).

The United States argues that these witness statements differ from those at issue in *Dobbs* because they were prepared more than two years after the alleged events and Kulik has not shown that the facts set out in the statements cannot be obtained from existing medical records and deposition testimony.[19] The court agrees with the United States that, to the extent the statements were not based on the witnesses' recollection of the events, but instead on a paper review of the medical records, deposition testimony might be equivalent to the statements themselves. The flaw in the United States' position is that each statement was written by a provider who treated Kulik, and was therefore at least colored by his or her recollection of the events. Indeed, one of the witnesses expressly stated that she remembered her contacts with Kulik well.[20] By soliciting statements from treating providers, as opposed to third-party paper reviewers, the OCG clearly intended for the statements to include more facts than could be gleaned from the medical records. Memories dim over time, and the United States is correct that the statements would likely contain more recollection-based facts had they been written contemporaneously instead of two years after the events. But, as Kulik points out, memories were certainly fresher in 2013, when the statements were written, than in 2015 when the witnesses were deposed. The witnesses' deposition testimony is not equivalent to the statements they wrote two years prior.

Kulik has shown a substantial need for the materials and an inability to obtain their substantial equivalent. They are not shielded from discovery by the work-product privilege.

**B.    The Witness Statements Are Not Medical Quality Assurance Records**

Alternatively, the United States argues that the witness statements are "medical quality assurance records" and therefore qualify for the medical quality assurance

---

[19] Doc. 29 at 19.

[20] The court reviewed the witness statements *in camera*.

privilege found at 25 U.S.C. § 1675. That statute defines a medical quality assurance program as one conducted by an "Indian health program or urban Indian organization to assess the quality of medical care."[21] Medical quality assurance records are confidential and generally privileged.[22] Such records include the "proceedings, records, minutes, and reports that (A) emanate from quality assurance program activities;" and "(B) are produced or compiled by or for an Indian health program or urban Indian organization as part of a medical quality assurance program."[23]

Because the witness statements were requested by the OGC for litigation purposes,[24] the United States' argument is untenable. The OGC cannot retroactively transform its litigation activities into a medical quality assurance program's activities merely by forwarding the claimant's records to risk management for medical review.[25]

## V. CONCLUSION

Based on the preceding discussion, Kulik's motion at docket 22 is **GRANTED**. The United States shall provide copies of the witness statements to Kulik's counsel within 7 days.

DATED this 28th day of June 2016.

/s/ JOHN W. SEDWICK
SENIOR JUDGE, UNITED STATES DISTRICT COURT

---

[21] 25 U.S.C. § 1675(a)(2).

[22] 25 U.S.C. § 1675(b).

[23] 25 U.S.C. § 1675(a)(3).

[24] *See* Declaration of Kara Hicks, Doc. 29-7 at 2-3 ¶ 8 ("The Practitioner Narratives were prepared at the direction of attorneys at the HHS/OGC in response to the administrative tort claim fired by Ms. Kulik and in anticipation of FTCA litigation in the event that Ms. Kulik filed suit in court.").

[25] *See id.* at 3 ¶ 10.